### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT CINCINNATI

DOMANSHAY WILLIS,  : Case No. 1:22-cv-264
:
     Plaintiff,  :
:
vs.  : Judge Matthew W. McFarland
: Magistrate Judge Karen L. Litkovitz
:
ODRC, DIRECTOR, *ET AL.*  :
:
     Defendants.  :

---

## REPORT AND RECOMMENDATION
## and ORDER

---

Domanshay Willis, an Ohio prisoner proceeding *in forma pauperis*, has filed a civil rights action under 42 U.S.C. § 1983. He alleges that his constitutional rights were violated during and after an assault by officers at Lebanon Correctional Institution. The matter is currently before the undersigned Magistrate Judge to conduct the initial screening of Willis' Complaint as required by law. 28 U.S.C. § 1915A(a); 28 U.S.C. § 1915(e)(2). For the reasons that follow, the Undersigned **ORDERS** that Willis' claims for excessive force and/or failure to intervene against Defendants Garvey, Hammonds, Brown, Patrick, Folkerson, and Kugle (in their individual capacities), and his claim for deliberate indifference to a serious medical need against Defendant Thompson (in her individual capacity and as narrowed herein), will **PROCEED** at this time. The Undersigned **RECOMMENDS** that the Court **DISMISS** the remaining claims against the remaining Defendants.

## I.    Initial Screening Standard

Because Plaintiff is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," and is also proceeding *in forma pauperis*, the Court is

required to conduct an initial screen of his Complaint. 28 U.S.C. § 1915A(a); 28 U.S.C. § 1915(e)(2). The Court must dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2).

To state a claim for relief, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must construe the complaint in plaintiff's favor, accept all well-pleaded factual allegations as true, and evaluate whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Id*. (quoting *Twombly*, 550 U.S. at 555).

In the interest of justice, this Court is also required to construe a pro se complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and citing Fed. R. Civ. P. 8(f) [now (e)]). Even with such a liberal construction, a pro se complaint must still adhere to the "basic pleading essentials." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Specifically, a pro se "complaint 'must contain either direct or inferential allegations respecting all the material elements' to recover under some viable legal theory." *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

2

## II.      Claims and Parties

Plaintiff Willis filed his Complaint with the assistance of another inmate.  (Doc. 1, PageID 19).  Initially, the Complaint was signed by the assisting inmate but not by Willis, so the Clerk returned it to him for his signature.  (*See* Deficiency Order, Doc. 4).  Willis returned the signed Complaint on April 19, 2022.  (Doc. 5).  The Undersigned considers this document (Doc. 5), described on the docket as a Response to the Deficiency Order, as well as the originally filed exhibits (Doc. 1-1, PageID 20-26) together as the operative Complaint.  The Clerk is **DIRECTED** to file this Complaint (combining Doc. 5 and Doc. 1-1, PageID 20-26) on the docket.

Willis names as defendants nine individuals who are employed at Lebanon Correctional Institution ("LECI") where he was previously an inmate, as well as the Ohio Department of Rehabilitation and Correction ("ODRC").  (Complaint, PageID 65, 67, 80).  It is unclear whether Willis also intended to name the Director of the ODRC as a defendant.  (*See id.*, PageID 65).  In the interest of completeness, the Undersigned will consider the relevant claims in the Complaint as if also raised against the Director.  The nine named employees (Officer C. Garvey, Officer Hammonds, Sgt. Brown, Lt. Patrick, Lt. Folkerson, Lt. Kugle, Darcy Thompson, R.N., Capt. Pablo, and Mrs. Sparks, Inspector of Institutional Services) are sued in their individual capacities for compensatory and punitive damages.  (*Id.*, PageID  80-82).  As against the ODRC, Willis seeks an injunction prohibiting it from employing the other defendants.  (*Id.*, PageID 82).

The Complaint is brought under 42 U.S.C. § 1983.  (*Id.*, PageID 65).  To state a cause of action under § 1983, a plaintiff must allege:  "(1) a deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law."

*Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citation omitted).

Willis labels his claims as excessive force, sexual harassment, intimidation, and cruelty (Complaint, PageID 68); deprivation of substantial due process, falsification, obstruction or interfering with civil rights, official corruption, and a pattern of corrupt activity (*id.*, PageID 76). His Complaint also suggests some other claims, which are also discussed herein.

Willis alleges that on March 18, 2021, members of the Special Response Team ("SRT") at LECI were searching inmates' cells. (*Id.*, PageID 68). Believing Willis to have voiced an objection to the beating of another inmate, SRT member Lt. Patrick ordered Willis to "get naked," "turn around, squat and cough." (*Id.*, PageID 69-71). Willis complied. (*Id.*, PageID 71). Lt. Patrick told Willis to repeat the action, adding "Bust that ass open!" (*Id.*, PageID 71). When his attempt was apparently unsatisfactory, Willis alleges that he received "a barrage of punches" from Lt. Folkerson. (*Id.*, PageID 71-72). Willis was also punched and kicked by several SRT members as he struggled to put his clothes on. (*Id.*, PageID 71). Among other things, he was punched on the left side of his face and struck on the head with a baton three times, until he lost consciousness. (*Id.*, PageID 72, 75).

While unconscious, Willis alleges that he was sprayed with a chemical irritant. (Complaint, PageID 72). Upon regaining consciousness, he was struck with a baton in the ribs and struck with closed fists in the mid-section and legs. (*Id.*). Willis feared for his life due to the intensity and perceived length of the ordeal, pleading that he could not breathe and that they were killing him. (*Id.*, PageID 73).

Officer Garvey then "choked [Willis] from a rear position" and pulled him up to standing. (Complaint, PageID 73). When Willis told other inmates to call his family and tell

4

them that he had been beaten, his face was forced into the wall, and Defendant Brown told him to shut up "or we just might kill you!" (*Id*., PageID 74). Willis collapsed and was hoisted into the air in a "hog-tied style" and moved into another cell, where was struck repeatedly until he lost consciousness again. (*Id*., PageID 75).

Willis alleges that he was kept in this cell for six days without a mattress, bedding, clothing (other than his shorts), toilet paper, hygiene products, or a shower opportunity. (*Id*.).

Willis further alleges that he was "not taken to medical" or provided with medical care after the assault, despite having suffered a large, severe cut on the top of his head, severe bruising, possible fractures of his rib cage, black eyes, a swollen and possibly broken jaw, a bruised and swollen knee, and lacerations to his face and legs. (Complaint, PageID 75, 77, 79[1]). He asserts that Darcy Thompson, R.N., viewed him two or three days after these events during institutional rounds and appeared to take note of Willis' injuries, but did not offer medical treatment or assistance. (*Id*., PageID 75, 79). Willis asserts that Nurse Thompson falsified her notes on this event to reflect that she saw Willis on March 17, 2021, when she actually saw him on March 21, 2021. (*Id*., PageID 79).

Willis filed an informal complaint to Captain Pablo and Mrs. Sparks, Inspector, which went unanswered. (Complaint, PageID 76). His requests for a Notice of Grievance were also ignored. (*Id*.). He asserts that Officer Garvey issued a falsified conduct report covering up the participation of Lt. Patrick, Lt. Folkerson, Sgt. Brown, and Lt. Kugle. (*Id*., PageID 78). Willis alleges that this was a conspiracy to obstruct and interfere with his rights. (*Id*.). Moreover, Willis asserts that these events show a pattern of inappropriate supervision and corrupt activity by employees of LECI. (*Id*., PageID 80).

---

[1] Two pages in the Complaint (Doc. 5), PageID 78 and PageID 79, appear to have been filed in reversed order.

### III.  Discussion

#### A.  Excessive Force and/or Failure to Intervene claims against the SRT Defendants

Willis alleges that Defendants Garvey, Brown, Patrick, Folkerson, and Kugle, members of LECI's SRT, participated in or were present for the assault against him.  (Complaint, PageID 70-75, 78).  An attachment to the Complaint includes Defendant Hammonds in these events as the person who used a chemical irritant against Willis, which Willis suggests occurred while he was unconscious.  (Conduct Report, Doc. 1-1, PageID 20; Complaint, PageID 72).

Without the benefit of an Answer or further briefing, the Undersigned concludes that Willis' excessive force and/or failure to intervene claims against the six SRT Defendants (in their individual capacities) may **PROCEED** to further development.  *See Batson v. Hoover*, 788 F. App'x 1017, 1020 (6th Cir. 2019) (quoting *Fazica v. Jordan*, 926 F.3d 283, 292 (6th Cir. 2019)) ("This circuit has consistently held that 'where a plaintiff who was unable to identify clearly which officers committed specific acts during the incident produces evidence that places an individual defendant in a small group of officers that committed allegedly unconstitutional acts within each other's presence, the plaintiff's claim [of excessive force or failure to intervene] against that defendant may survive summary judgment.'").

#### B.  Deliberate Indifference claim against Nurse Thompson

Willis says that this assault occurred the afternoon of March 18, 2021.  (Complaint, PageID 68; Conduct Report, Doc. 1-1, PageID 20).  Approximately two days later, on March 21, 2021, he says he was seen by Darcy Thompson, R.N., during institutional rounds.  (Complaint, PageID 75, 77, 79).  He explained to her that he had been beaten, detailed the extent of his injuries, the "volume of pain [he] was experiencing," and his specific concerns, and she appeared to take note.  (*Id*.).  Among other things, Willis believed he might have a broken jaw and broken

ribs and thought the cut on his head might need stitches, and he was concerned about infection. (*Id.*, PageID 79). He alleges that Nurse Thompson did not provide him with any medical assistance or treatment. (*Id.*, PageID 75, 77, 79). These allegations raise a claim for deliberate indifference to a serious medical need.

Willis also alleges that Nurse Thompson charged him a copay for the health screening and backdated her paperwork to March 17, 2021, "in an attempt to Obstruct Plaintiff's assertion of Excessive Force." (*Id.*, PageID 79; *see also* Healthcare Debit, Doc. 1-1, PageID 26 (dated March 17, 2021)). Willis labels this second set of allegations as "falsification," but they fail to state a claim for relief. (Complaint, PageID 76). *See McDougald v. Eaches*, No. 1:16-cv-900, 2016 WL 7015834, at *3 (S.D. Ohio Sept. 16, 2016), *adopted*, 2016 WL 7015785 (S.D. Ohio Nov. 30, 2016) (collecting cases) ("The mere filing of an incomplete or false medical report does not state a claim of federal constitutional dimension.").

Willis also alleges generally that after the assault, he was "not taken to medical." (Complaint, PageID 75; *but see* Conduct Report, Doc. 1-1, PageID 20 ("Willis was then placed into handcuffs and escorted out of the cell and was seen by medical.")). Willis does not, however, link this general failure to provide medical care to Nurse Thompson or to any other Defendant. He says that after he was brought to a cell in the L-1 housing unit, he lost consciousness again, and awoke after an undetermined amount of time. (Complaint, PageID 75). He fails to state a claim for deliberate indifference to a serious medical need against any particular Defendant in this respect. *See Batson v. Hoover*, 355 F. Supp. 3d 604, 611 (E.D. Mich. 2018), *aff'd*, 788 F. App'x 1017 (6th Cir. 2019) (dismissing medical claim because the record did not "suggest that any of the named individual defendants were in any way involved with the alleged deprivation of his medication. That failure to establish individual participation

7

in the alleged violations is dispositive of all the claims against the individual defendants on this theory of recovery."); *Johnson v. Mahlman*, No. 1:16-cv-503, 2016 WL 3511954, at *3 (S.D. Ohio June 6, 2016), *adopted in part, rejected in part*, 2016 WL 3434010 (S.D. Ohio June 22, 2016) (dismissing claim for denial of medical care for failure to state a claim: "to the extent that plaintiff seeks to bring a claim based on the alleged denial of medical or decontamination care after the pepper-spraying incident, he has not alleged any facts even remotely suggesting that either of the two named defendants played any role in that matter [and] has not stated an actionable claim under § 1983 against the defendants based on the theory of deliberate indifference to his serious medical needs.").

Accordingly, without the benefit of an Answer or further briefing, the Undersigned concludes that Willis' claim for deliberate indifference to a serious medical need against Nurse Thompson, as narrowed above, may **PROCEED** to further development.  The "falsification" claim against her—to the extent it is intended as a free-standing claim—should be dismissed. Any other claim for the denial of medical care should be dismissed.

### C.  Claims against Captain Pablo and Mrs. Sparks

Willis alleges that Captain Pablo (Shift Commander) and Mrs. Sparks (Inspector of Institutional Services) ignored his report of the assault, failed to act, failed to investigate, and obstructed the investigation into the assault.  (Complaint, PageID 76-77).  He so concludes based on his assertion that his informal complaint "went unanswered," his request for a Notice of Grievance was ignored, and no Use of Force hearing was held.  (*Id*.).

Pablo, as an apparent supervisor, cannot be held liable for the SRT Defendants' actions solely on that basis.  *See Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (citing *Gregory v. City of Louisville,* 444 F.3d 725, 751 (6th Cir. 2006)) ("a supervisor cannot be held

liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another."). There are otherwise no allegations that Pablo "implicitly authorized, approved or knowingly acquiesced in" the SRT Defendants' behavior. *See Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (quoting *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 865 (6th Cir. 2020) ("To succeed on a supervisory liability claim, a plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.") (cleaned up).

To the extent that Willis seeks to hold Pablo liable for Pablo's own actions, he has not stated a claim for relief. The only factual allegation against Pablo is that he "failed to act" on Willis' informal complaint. (Complaint, PageID 76; *see also* Informal Complaint Resolution, Doc. 1-1, PageID 21[2]). But "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 526 U.S. 1115 (1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). More specifically, "Section 1983 liability cannot be based upon a defendant's handling of a grievance or failure to remedy unconstitutional behavior committed by others." *Taylor v. First Med. Mgmt.*, No. 18-5282, 2019 WL 1313828, at *3 (6th Cir. Feb. 21, 2019) (citing *Shehee,* 199 F.3d at 300).

The same is true with respect to Defendant Sparks. Willis alleges that she "fail[ed] . . . to investigate Plaintiff's affirmation of excessive use of force." (Complaint, PageID 77). A failure to investigate another person's alleged constitutional violation "do[es] not constitute 'active constitutional behavior' as required and thus, [is] not actionable." *Frodge v. City of Newport*,

[2] This document is almost entirely illegible as filed.

501 F. App'x 519, 532 (6th Cir. 2012) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir.

1999)).  Similar claims have been dismissed for failure to state a claim:

> The complaint should also be dismissed to the extent that plaintiff seeks to hold any defendant liable in connection with the grievance process or investigation of his claims.  Plaintiff claims that Barney failed to view the camera footage . . . and that defendant Sparks failed to take corrective action with respect to officers' actions despite plaintiff's claim that he notified Sparks of his issues through the grievance procedure . . . .  However, "[t]here is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007); *see also Daniels v. Lisath*, No. 2:10-cv-968, 2011 WL 2710786, at *2 (S.D. Ohio July 13, 2011).  Furthermore, to the extent that plaintiff claims that the grievance procedure failed to produce the correct outcome, this cannot give rise to a § 1983 claim because "[p]rison inmates do not have a constitutionally protected right to a grievance procedure." *Miller v. Haines*, No. 97-3416, 1998 WL 476247, at *1 (6th Cir. Aug. 3, 1998) (citations omitted).  Prison officials whose only roles "involve their denial of administrative grievances and their failure to remedy the alleged [unconstitutional] behavior'" cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  Nor does a prison official's alleged failure to adequately investigate claims of misconduct rise to the level of "encouragement" that would make the official liable for such misconduct. *Knop v. Johnson*, 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Therefore, plaintiff's claims that Barney, Sparks, or any other defendant failed to investigate the incident or take corrective action should be dismissed for failure to state a claim upon which relief may be granted.

*Johnson v. Osborne*, No. 1:21-cv-3, 2021 WL 2077908, at *4 (S.D. Ohio Apr. 27, 2021),

*adopted*, 2021 WL 2093258 (S.D. Ohio May 24, 2021) (McFarland, J.).  The claims against

Pablo and Sparks should similarly be dismissed here.

In making this recommendation, the Undersigned notes that the conclusory labels

applied to the Pablo and Sparks' behavior of "obstructing justice," "demonstrating a pattern of

official corruption," or "deprivation of substantial due process" do not mandate a different result.

(Complaint, PageID 76-77).  These are legal conclusions pled as factual allegations and are

themselves insufficient to state a claim.  *See Eidson v. Tenn. Dept. of Children's Servs.*, 510 F.3d

631 (6th Cir. 2007) (internal citations omitted) ("Conclusory allegations or legal conclusions

masquerading as factual allegations will not suffice [to state a plausible claim for relief].");

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) (a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient to state a claim).  The *factual* allegations against Pablo and Sparks are of inaction only and are insufficient to state a claim against them.  Accordingly, the claims against Defendants Pablo and Sparks should be dismissed.

**D.  Claims against the ODRC and its Director**

Willis does not make any particular allegations against the ODRC, but he appears to seek to hold it liable for the actions of its employees.  (Complaint, PageID 80, 82).  In this respect, he refers to the ODRC as a "United States Governmental Entity."  (Complaint, PageID 80).  However, the ODRC is an agency of the State of Ohio, not the United States.  *See Reed v. O.D.R.C.*, No. 2:19-cv-898, 2019 WL 1545576, at *2 (S.D. Ohio Apr. 9, 2019), *adopted*, 2019 WL 1934000 (S.D. Ohio May 1, 2019); *Stubbs v. Ohio Dep't of Rehab. & Corr.*, No. 1:17-cv-813, 2018 WL 575910, at *2 (S.D. Ohio Jan. 26, 2018), *adopted*, 2018 WL 1305466 (S.D. Ohio Mar. 12, 2018) (the ODRC "is a state entity").

As a state agency, the ODRC is not a "person" that may be sued under § 1983.  *See Moore v. Morgan*, No. 1:16-cv-655, 2016 WL 5080268, at *3 (S.D. Ohio June 27, 2016), *adopted*, 2016 WL 5080351 (S.D. Ohio Sept. 16, 2016) (dismissing claims against the ODRC because "[i]t is well-settled that the state agencies are not 'persons' or legal entities that may be sued under § 1983."); *Stubbs*, 2018 WL 575910, at *2 ("the ODRC is not a 'person' within the meaning of 42 U.S.C. § 1983.").  Because it is not a "person," Willis cannot state a § 1983 claim against it.  *See Hunt*, 542 F.3d at 534 (to state a § 1983 claim, a plaintiff must allege that a deprivation of rights was "caused by a *person* acting under color of state law.") (emphasis added).  Thus, all claims against the ODRC should be dismissed.

11

To the extent the Complaint could be read to sue the Director of the ODRC (*see* Doc. 5, PageID 75 (caption)), the Undersigned notes that there are no specific factual allegations against the Director in the Complaint.  "The Sixth Circuit 'has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did that violated the asserted constitutional right.'"  *Reid v. City of Detroit*, No. 18-13681, 2020 WL 5902597, at *6 (E.D. Mich. Oct. 5, 2020) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)) (emphasis in original).  "Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983."  *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978)).  Thus, "[w]here a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to pro se complaints."  *Catanzaro v. Harry*, 848 F. Supp. 2d 780, 791 (W.D. Mich. 2012).

Finally, the Director "cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis."  *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992)).  Any claims against the Director in the Complaint, to the extent that she is named as a defendant, should be dismissed.

### E.  **"Inappropriate Supervision" and state law claims**

Willis concludes in his Complaint that the above allegations demonstrate a pattern of "inappropriate supervision."  (Complaint, PageID 80).  This term is not a reference to a free-standing federal constitutional right; it is a reference to a provision of the state administrative code:

> [T]he term "inappropriate supervision" means any continuous method of annoying or needlessly harassing an inmate or group of inmates, including, but not limited to, abusive language, racial slurs, and the writing of inmate conduct reports strictly as a means of harassment. A single incident may, due to its severity or egregiousness, be considered inappropriate supervision for purposes of this rule.

Ohio Admin. Code 5120-9-04(B). The provision continues on to say that "Inmates may always address issues of . . . inappropriate supervision by utilizing the inmate grievance procedures in accordance with rule 5120-9-31 of the Administrative Code." Ohio Admin. Code 5120-9-04(D).

It is axiomatic that Section 1983 does not provide a remedy for alleged violations of state laws or regulations. *See Williams v. Burgess*, No. 5:21-cv-99, 2021 WL 5816830, at \*4 (W.D. Ky. Dec. 7, 2021) (citing *Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007)) ("The purpose of § 1983 is to remedy violations of federal law, not state law."); *Lewellen v. Metro. Gov't of Nashville*, 34 F.3d 345, 347 (6th Cir. 1994) ("Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate"). And, "[c]ourts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure." *White v. Perron*, No. 2:20-cv-247, 2021 WL 3855589, at \*9 (W.D. Mich. Aug. 30, 2021) (citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) and other cases). Thus, the "Defendants' alleged failure to comply with [a state] administrative rule or policy does not itself rise to the level of a constitutional violation." *Williams v. Burke*, No. 2:08-cv-123, 2009 WL 1788374, at \*1 (W.D. Mich. June 18, 2009) (collecting cases). Willis' allegations here that Defendants failed to follow state policies (entering cell without cuffing or restraining inmates (PageID 69-70); not investigating or conducting a use of force hearing (PageID 77); or inappropriately supervising (PageID 80)) therefore do not independently state a claim for a violation of *federal* law that can be pursued in

13

a § 1983 action. *See Burgess,* 2021 WL 5816830, at *4 ("to the extent that Williams identifies

state policies as conferring a right for a § 1983 claim, the Court dismisses that claim").

Willis' specific "inappropriate supervision" claim is examined against this backdrop.

Although the contours of the claim are not well explained, Willis may be referring to his

allegation that Defendant Garvey issued a false Conduct Report obscuring Garvey's actions and

covering up the actions of the other SRT Defendants. (Complaint, PageID 78). *Cf. Walker v.

Mohr*, No. 2:16-cv-769, 2017 WL 398418, at *5 (S.D. Ohio Jan. 30, 2017) (Sargus, C.J.)

("Plaintiff suggests that Defendants violated [Ohio Admin. Code 5120-9-04(B)] by issuing

inmate conduct reports as a means of harassing him."). The Undersigned is unable to discern the

deprivation of a federal or constitutional right in any facet of this allegation.

For example, this Court has specifically held that Ohio Admin. Code 5120-9-04(B) "does

not create a liberty interest capable of being violated by Defendants" in this context. *Walker*,

2017 WL 398418, at *5. "The state simply has no federal due process obligation to follow all of

its procedures; such a system would result in the constitutionalizing of every state rule, and

would not be administrable." *Id*. (internal citations and quotations omitted).

In *Walker*, this Court held that a similar claim of inappropriate supervision, which

plaintiff suggested showed a violation of a liberty interest under the Fourteenth Amendment,

"hinges on the nature of the deprivation to which [the plaintiff] was subjected" because of the

allegedly harassing report. *Walker*, 2017 WL 398418, at *5. Where "Plaintiff was not subjected

to atypical or significant hardship in relation to the ordinary incidents of prison life as a

consequence of Defendants' purported inappropriate supervision," he did not state a claim under

§ 1983. *Id*. This Court found that plaintiff's isolation for 15 days, increase in security level, and

revocation of a relative's visitation privileges did not rise to that level. *Id*. In Willis' case, the

only allegation in the Complaint is that he was held in a cell for six days, which is less onerous than the result in *Walker* and similarly does not rise to the level of a constitutional violation. (Complaint, PageID 75).

The Sixth Circuit has also said that "[a] prisoner has no constitutional right to be free from false accusations of misconduct." *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *4 (6th Cir. Apr. 23, 2019) (quoting *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003)); *see also Johnson v. Osborne*, No. 1:21-cv-3, 2021 WL 2077908, at *3 (S.D. Ohio Apr. 27, 2021), *adopted*, 2021 WL 2093258 (S.D. Ohio May 24, 2021) ("Erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right."). "A constitutional violation may occur, if as a result of an accusation, the Plaintiff was deprived of a liberty interest without due process." *Reeves v. Mohr*, No. 4:11-cv-2062, 2012 WL 275166, at *2 (N.D. Ohio Jan. 31, 2012) (citing *Sandin v. Conner*, 515 U.S. 472, 485 (1995). However, "[t]o the extent that false accusations of misconduct implicate due process concerns, the false charges 'do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing.'" *Brown*, 2019 WL 5436159, at *4 (quoting *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004)). Here, the documents provided with the Complaint show that Willis did have a hearing before the Rules Infraction Board ("RIB") and thereafter took a "Disciplinary Appeal to Warden/Designee," which affirmed the RIB's determination. (Doc. 1-1, PageID 22-23). There is no allegation in the Complaint that these proceedings failed to meet the minimum due process requirements. *See King v. Wilkinson*, No. 2:04-cv-116, 2005 WL 3535154, at *5 (S.D. Ohio Dec. 23, 2005) ("even if one were to assume that [the defendant] did issue false conduct reports, Plaintiffs have not established a constitutional violation unless the hearing before the RIB failed to meet the minimum

requirements of due process," which includes, for inmates, "advance notice of the charges and if found guilty, a written statement of the evidence relied upon."). Rather, the Conduct Report and "Legal Services Decision on Appeal" attached to the Complaint suggest that the proceedings met these minimum requirements. (Doc. 1-1, PageID 20, 22).

Finally, to the extent that an "inappropriate supervision" claim was properly pled here, it should not proceed. In *King v. Wilkerson*, this Court evaluated a similar claim and determined that the relevant issue was "whether [the defendant] issued a conduct report to Plaintiffs for non-existent reasons." No. 2:04-cv-116, 2005 WL 3535154, at *3 (S.D. Ohio Dec. 23, 2005) (Sargus, J.). The Court said that the fact that plaintiff was convicted of some of the conduct charged in the allegedly false conduct report "is evidence that [defendant] did not issue the conduct report for non-existent reasons." *Id*. Here, the documents attached to the Complaint similarly reflect that Willis was convicted of the allegations in the allegedly false conduct report and show that the report was not issued for non-existent reasons. (Doc. 1-1, PageID 22).

For all of these reasons, the "inappropriate supervision" claim and other claims based on alleged violations of state law should be dismissed.

## F. Conspiracy, Obstruction, or "Pattern of Official Corruption" claims

Willis alleges that Defendant Garvey, "in conspiracy with" Defendants Patrick, Folkerson, Brown, and Kugle, "obstructed, and interfered with Plaintiff's 8th, 14th, 6th Amend. Rights, in a pattern of official corruption." (Complaint, PageID 77). Garvey allegedly did so by filing a false conduct report and lying in his description of Willis's conduct and his description of his and the other SRT Defendants' response to it. (*Id*.).

16

"A civil conspiracy under § 1983 is an agreement between two or more persons to injure another by unlawful action." *Crowley v. Anderson Cnty., Tenn.,* 783 F. App'x 556, 560 (6th Cir. 2019) (internal citations and quotations omitted).

> "To prevail on a civil conspiracy claim, [a plaintiff] must show that (1) a "single plan" existed, (2) [the defendant] "shared in the general conspiratorial objective" to deprive [the plaintiff] of his constitutional (or federal statutory) rights, and (3) "an overt act was committed in furtherance of the conspiracy that caused the injury" to [the plaintiff].

*Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)).

"The Sixth Circuit has warned that 'conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.'" *Ayers v. Gabis*, No. 20-11735, 2021 WL 4316853, at *6 (E.D. Mich. Sept. 23, 2021) (quoting *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008)). "These guidelines have led the court to conclude that the 'pleading requirements governing civil conspiracies are relatively strict.'" *Id*.

Willis' allegations fall short of meeting this requirement. He simply alleges that a conspiracy existed. (Complaint, PageID 78). These "conclusory assertions that defendants were acting in concert do not meet the requirement that allegations of a conspiracy be pled with some degree of specificity." *Ashenhurst v. 27th District Court*, No. CIV. 07-10082, 2007 WL 1119883, at *2 (E.D. Mich. Apr. 16, 2007) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987) and *Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984)).

To the extent that Willis may be seeking to plead a violation of 18 U.S.C. § 241 and 18 U.S.C. § 242, which concern a "Conspiracy against rights" and a "Deprivation against rights under color of law," his claims should be dismissed. "These are criminal statutes; alleged

17

violations can only be considered by the Court after a federal grand jury has returned an indictment . . . ."  *Kennedy v. Warden, Marysville Reformatory for Women*, No. 2:20-cv-2979, 2021 WL 3578096, at *1 (S.D. Ohio Aug. 13, 2021).  There is no allegation here that a federal indictment has been returned against the Defendants.

Moreover, these criminal statutes "do not provide for a private right of action" for a private plaintiff like Willis, meaning that Willis cannot pursue alleged violations of these criminal statutes in a civil suit.  *See Kelly v. City of New Philadelphia*, No. 5:11-cv-474, 2011 WL 3705151, at *2-3 (N.D. Ohio Aug. 22, 2011) (quoting *United States v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003)) ("The district court properly dismissed [plaintiff's] claim pursuant to 18 U.S.C. §§ 241 or 242 because [he] has no private right of action under either of these criminal statutes.").  Any attempted claim for the crime of obstruction under 18 U.S.C. § 1505 ("Obstruction of proceedings before departments, agencies, and committees") would likewise be unavailing.  *See Silva v. Swift*, No. 3:20-cv-938, 2020 WL 6685549, at *3 (M.D. Tenn. Nov. 10, 2020) (citing *Hamilton v. Reed*, 29 F. App'x 202, 204 (6th Cir. 2002)) (holding that there is no private right of action to pursue charges of obstruction under 18 U.S.C. § 1505 in a § 1983 action).  "Where a plaintiff has no private right of action, a plaintiff has not stated a claim upon which relief can be granted."  *Flood v. Reed*, No. 2:16-cv-778, 2017 WL 1021364, at *3-4 (S.D. Ohio Mar. 16, 2017) (citing *Kafele v. Frank & Woolridge Co.*, 108 F. App'x. 307, 308-09 (6th Cir. 2004)).

Finally, Willis' conclusion that his allegations demonstrate a "pattern of official corruption" does not identify or invoke any federal rights that may have been violated, as would be necessary to state a § 1983 claim.  *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008).  Accordingly, these claims should be dismissed.

### G. **Other claims raised or suggested in the Complaint**

*1. Conditions of Confinement claim*

Willis alleges that after the assault, he was held in a cell for six days without a mattress, bedding, clothing (except shorts), toilet paper, hygiene items, or a shower opportunity. (Complaint, PageID 75). These allegations suggest a "conditions of confinement" claim.

It is well-settled that "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Pfeiffer v. Butler Cnty. Sheriff Dep't.*, No. 1:10-cv-672, 2012 WL 1203557, at *8 (S.D. Ohio Apr. 10, 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). The Eighth Amendment, which protects prison inmates from "cruel and unusual punishments," U.S. CONST. amend. VIII, also protects them against "extreme deprivations" that deny "the minimal civilized measure of life's necessities" while in prison. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) and *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

However, "[s]hort term deprivations of toilet paper, towels, sheets, blankets, mattresses, toothpaste, toothbrushes and the like do not rise to the level of a constitutional violation." *Gilland v. Owens*, 718 F. Supp. 665, 685 (W.D. Tenn. 1989). The Sixth Circuit has "concluded that deprivation of a shower and other personal hygiene items for a 'brief span of time . . ., i.e., only six days' is not actionable conduct." *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (quoting *Siller v. Dean*, 205 F.3d 1341 (6th Cir. Feb. 1, 2000)); *see also Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996) (unpublished table decision) ("The defendants did not violate [the plaintiff's] Eighth Amendment rights by depriving him of a mattress for a two week period."); *Hailey v. Bogota*, No. 20-12583, 20-12584, 2021 WL 509899, at *6 (E.D. Mich. Feb. 11, 2021) (concluding that plaintiff failed to state an Eighth Amendment

claim where he alleged "he was held in isolation for two weeks, during which he was deprived of his personal possessions, adequate food, hygiene supplies, and privileges such as access to the yard, telephone, and mail").  Because Willis' allegations concerning the conditions of his confinement do not rise to the level of a constitutional violation, any such claim should be dismissed.

### 2. *Intimidation and verbal harassment claims*

Willis labels part of his claim "Intimidation."  (Complaint, PageID 68).  Although somewhat unclear, he may be referring to his allegation that Defendant Brown stated:  "You will shut the Fuck up Inmate or we Just might Kill you!"  (Complaint, PageID 74).  This allegation fails to state a claim.

"Harassing or degrading language by a prison official, while unprofessional and despicable, does not amount to a constitutional violation."  *Mallory v. Smith,* No. 3:17-cv-P253, 2017 WL 3484690, at *3 (W.D. Ky. Aug. 14, 2017) (collecting cases); *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief.").  Likewise, "verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment."  *Snelling v. Smith*, No. 1:16-cv-656, 2016 WL 6518264, at *6 (W.D. Mich. Nov. 3, 2016) (citing *Ivey*, 832 F.2d at 955).  Although problematic and potentially relevant to the claims that are proceeding here, Defendant Brown's statement itself does not amount to a constitutional violation and any claim based upon it should be dismissed.

### 3.   *Sexual Harassment or Sexual Imposition claim*

Willis labels part of his claim as "sexual harassment."  (Complaint, PageID 68).  It is not entirely clear what Willis is claiming in this respect, or against whom he is claiming it.  Willis may be referring to the instruction by Defendant Patrick to "get naked," "turn around, squat and cough" during the search of his cell, and his repeated instruction to "Do it again Willis, Bust that ass open!"  (*Id.*, PageID 70-71).  Willis says he was very uncomfortable and confused at these statements.  (*Id.*, PageID 71).

The Eighth Amendment, by prohibiting cruel and unusual punishments, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey*, 832 F.2d at 954 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)).  As noted above, verbal harassment is not considered punishment and does not "rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."  *Snelling*, 2016 WL 6518264, at *6.  "With respect to sexual threats or harassment, circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement [of an Eighth Amendment Claim] because such conduct does not constitute the unnecessary and wanton infliction of pain."  *Id.* (and the cases cited therein).  "Some courts have held that even minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth Amendment violation."  *Id.*

Here, there are no allegations of sexual touching in connection with the single statement by Patrick.[3]  (Complaint, PageID 70-71).  *Cf Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the

---

[3] To the extent Willis alleges that Patrick participated in or was present for the excessive force applied during the events occurring *after* this statement, that claim is proceeding in its own right.  *See* Section III.A.

21

objective component of the Eighth Amendment). The alleged "verbal sexual harassment, standing alone, [is] insufficient to state a claim under the Eighth Amendment." *Snelling*, 2016 WL 6518264, at *7. Thus, to the extent that Willis raises a "sexual harassment" or "sexual imposition"[4] claim against Patrick, he fails to state a claim on which relief can be granted.

## IV. Summary and Conclusions

The undersigned Magistrate Judge, having conducted the initial screening of Willis' Complaint as required by law, **THEREFORE <u>ORDERS</u> THAT**:

1.      Plaintiff Willis' claims for excessive force and/or failure to intervene against Defendants Garvey, Hammonds, Brown, Patrick, Folkerson, and Kugle (in their individual capacities) shall **PROCEED** at this time.

2.      Plaintiff Willis' claim for deliberate indifference to a serious medical need against Defendant Thompson (in her individual capacity and as narrowed above) shall **PROCEED** at this time.

3.      Plaintiff Willis shall submit to the Court, **within 30 days**, completed Summons Forms for Defendants Garvey and Brown. The appropriate forms have been submitted for the other Defendants. (Doc. 1-3, 1-4, 2).

4.      The United States Marshal shall serve a copy of the complaint, summons, the Order granting Plaintiff *in forma pauperis* status, and this Report and Recommendation and

---

[4] Willis refers to this claim as "sexual imposition" in his prayer for relief. (Complaint, PageID 82). "Sexual imposition" is a crime under state law, *see* Ohio Revised Code § 2907.06, but is not an independent basis for a § 1983 claim. *See* Section III.E, *supra*; *Silva v. Swift*, No. 3:20-cv-938, 2020 WL 6685549, at *3 (M.D. Tenn. Nov. 10, 2020) (citing *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014)) (dismissing § 1983 claim based on a state criminal statute because the state "criminal . . . code does not set forth a right 'secured by the Constitution or laws of the United States.'").

Order upon Defendants as directed by Plaintiff, with costs of service to be advanced by the United States.

5.      Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon Defendants' attorney, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to Defendants or Defendants' counsel.  Any paper received by a District Judge or Magistrate Judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

6.      Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

Further, the undersigned Magistrate Judge **<u>RECOMMENDS</u> THAT:**

1.      The Court **DISMISS** Plaintiff Willis' remaining claims, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), for failure to state a claim.  This includes all claims against Defendants Pablo, Sparks, the ODRC, and its Director.  It also includes claims against the other named Defendants for deliberate indifference to a serious medical need (except the narrowed claim against Defendant Thompson that is proceeding); for inappropriate supervision and other claims based on state law; for conspiracy, obstruction, and a pattern of official corruption; and relating to the conditions of his confinement, intimidation and verbal harassment, and sexual harassment or sexual imposition.

2.      The Court **CERTIFY** pursuant to 28 U.S.C. § 1915(a)(3) that, for the reasons discussed above, an appeal of any Order adopting this Report and Recommendation would not

23

be taken in good faith, and therefore, deny Plaintiff leave to appeal *in forma pauperis*.  *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

### V.    Notice Regarding Objections to this Report and Recommendation

If any party objects to this Report and Recommendation ("R&R"), the party may serve and file specific, written objections to it within **FOURTEEN (14) DAYS** after being served with a copy thereof.  Fed. R. Civ. P. 72(b).  All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections.  The Court may extend the 14-day objections period if a timely motion for an extension of time is filed.

A Judge of this Court will make a de novo determination of those portions of the R&R to which objection is made.  Upon proper objection, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R de novo, and will also operate as a waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

June 7, 2022

KAREN L. LITKOVITZ
UNITED STATES MAGISTRATE JUDGE